No. 04-97-00674-CV

CHROMALLOY GAS TURBINE CORPORATION,
Appellant
v.
UNITED TECHNOLOGIES CORPORATION,
Appellee
From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 95-CI-12541
Honorable John J. Specia, Jr., Judge Presiding
ON MOTION FOR REHEARING
Opinion by: Paul W. Green, Justice
Sitting: Phil Hardberger, Chief Justice
 Alma L. López, Justice
 Paul W. Green, Justice


Delivered and Filed: November 24, 1999

MOTION FOR REHEARING OVERRULED

 The opinions of the court dated October 14, 1998, and November 17, 1999, are
withdrawn and the following is substituted. The motion for rehearing is overruled.

* * *


 The question is whether a private plaintiff in an antitrust action is entitled to
injunctive relief when the defendant attempted to engage in monopolistic conduct, but the
illegal conduct caused the plaintiff neither damage nor irreparable injury. Under the antitrust
statute, a plaintiff who is threatened with injury because of the monopolistic conduct of a
defendant may enjoin the illegal conduct. In this case, because the evidence is inconclusive
that the plaintiff is threatened with injury, we hold it was not an abuse of discretion for the
trial court to deny injunctive relief. Accordingly, we affirm the judgment of the trial court.

Background


 Chromalloy Gas Turbine Corporation ("Chromalloy") repairs commercial jet engines,
including those made and sold by the Pratt & Whitney Aircraft Division of United
Technologies Corporation ("Pratt"). In 1995, Chromalloy sued Pratt for violations of the
state antitrust law. Specifically, Chromalloy alleged that Pratt offset its losses from the sale
of new engines with monopolistic profits from the sale of spare parts. According to
Chromalloy, Pratt increased the spare parts market by restricting the repaired parts market
through a variety of anticompetitive activities, including withholding technical data, denying
"approved status" to independent repairs, and advising airlines to reject repaired parts.

 Pratt counterclaimed for declaratory and injunctive relief, alleging Chromalloy
engaged in unfair competition. According to Pratt, Chromalloy possessed both the technical
ability and the legal authority to develop and sell its own repairs, without Pratt intervention.
Essentially, Pratt characterized Chromalloy's complaints as "sour grapes" about its own
increasing competition and decreasing quality.

 After a three-month trial, the parties' claims were submitted to a jury, which found
that Pratt "willfully or flagrantly" attempted to engage in monopolistic conduct, but that
Chromalloy was not damaged by the illegal conduct. The jury further found that Pratt's
conduct would not cause irreparable injury to Chromalloy. Lastly, the jury found against
Pratt on its claims against Chromalloy. The trial court rendered a take-nothing judgment
against both parties. Pratt did not appeal. Chromalloy's appeal is limited to the trial court's
refusal to grant injunctive relief.

The Texas Antitrust Act


 The Texas Free Enterprise and Antitrust Act ("the Act") prohibits monopolies or
attempts to monopolize. Tex. Bus. & Com. Code Ann. 15.05(b) (Vernon 1987). However,
the mere "possession of monopoly or market power is not forbidden." E. Thomas Sullivan
& Jeffrey L. Harrison, Understanding Antitrust & Its Economic Implications 244
(1988). Likewise, the prohibition against attempted monopoly does not encompass "all
efforts to acquire market power." Id. The Act was not intended, for example, to protect
against increasing competition. See Cargill, Inc. v. Monfort of Colorado, Inc., 479 U.S. 104,
122 (1986).

 To establish an illegal monopoly, a plaintiff must show (1) the defendant's possession
of monopoly power in the relevant market, and (2) the willful acquisition or maintenance
of that power as distinguished from growth or development as a consequence of a superior
product, business acumen, or historical accident. Caller-Times Pub. Co., Inc. v. Triad
Communications, Inc., 826 S.W.2d 576, 580 (Tex. 1992). To prove attempted monopoly,
a plaintiff must show (1) the defendant has engaged in predatory or anticompetitive conduct
with (2) a specific intent to monopolize and (3) a dangerous probability of achieving
monopoly power. Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447, 456 (1993).(1) The
difference between actual monopoly and attempted monopoly rests in the requisite intent and
the necessary level of monopoly power. Image Technical Servs., Inc. v. Eastman Kodak Co.,
125 F.3d 1195, 1202 (9th Cir. 1997), cert. denied, 118 S.Ct. 1560 (1998).

 Once a monopoly or attempted monopoly is established, the Act permits recovery of
damages as well as injunctive relief. Injunctive relief is available to a plaintiff if a violation
of the Act threatens it with injury.

 Any person . . . whose business or property is threatened with
injury by reason of anything declared unlawful in . . . this Act
may sue any person . . . to enjoin the unlawful practice
temporarily or permanently. In any such suit, the court shall
apply the same principles as those generally applied by courts
of equity in suits for injunctive relief against threatened conduct
that would cause injury to business or property.

Tex. Bus. & Com. Code Ann. 15.21(b) (Vernon 1987) (emphasis added), and see Zenith
Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 130 (1969) (injunction authorized
on demonstration of significant threat of injury from impending or ongoing violation).
Standard and Scope of Review

 A jury may determine whether the Act has been violated, but the trial court
determines the propriety of injunctive relief; that is, whether the illegal conduct threatens the
plaintiff with injury. See Valenzuela v. Aquino, 853 S.W.2d 512, 514 n.2 (Tex. 1992); State
v. Texas Pet Foods, Inc., 591 S.W.2d 800, 803 (Tex. 1979). To make its determination, the
trial court must consider the ultimate facts found by the jury and may consider that a settled
course of conduct "will continue, absent clear proof to the contrary." See Texas Pet Foods,
591 S.W.2d at 804. Thus, the trial court's ruling is a mixed question of law and fact. Alamo
Title Co. v. San Antonio Bar Ass'n, 360 S.W.2d 814, 816 (Tex. Civ. App.--Waco 1962, writ
ref'd n.r.e.).(2)
 As with other mixed questions of law and fact, we review the trial court's decision
to issue an injunction with the abuse of discretion standard. See Priest v. Texas Animal
Health Comm'n, 780 S.W.2d 874, 875 (Tex. App.--Dallas 1989, no writ). Under this
standard, we defer to the trial court's ruling on factual matters while reviewing legal
questions de novo. Pony Express Courier Corp. v. Morris, 921 S.W.2d 817, 820 (Tex.
App.--San Antonio 1996, no writ). The trial court abuses its discretion when it fails to
properly apply the law to the undisputed facts, when it acts arbitrarily or unreasonably, or
when it bases its ruling on factual assertions unsupported by the record. Remington Arms
Co., Inc. v. Luna, 966 S.W.2d 641, 643 (Tex. App.--San Antonio 1998, pet. denied).

Discussion


 Chromalloy contends the trial court erred in refusing to grant an injunction because
the verdict and record conclusively establish that Pratt's illegal conduct constitutes a threat
of injury. Conversely, Pratt argues that Chromalloy failed to establish either a threat of injury
or ongoing illegal conduct. We agree with Pratt and, by doing so, reject Chromalloy's
contention that in a private action the finding of an antitrust violation, standing alone,
automatically entitles the plaintiff to injunctive relief unless the defendant proves it has
ended its anticompetitive practices.

 There are different proof requirements for injunctive relief between government and
private antitrust actions. In a government antitrust action, injunctive relief is available upon
a finding that a defendant has engaged in monopolistic conduct. The inherent threat to the
public interest is deemed sufficient to entitle the government to injunctive relief. But in a
private action, a general threat to the public is insufficient to establish a plaintiff's right to
an injunction. See Cargill, Inc. v. Monfort of Colorado, Inc., 479 U.S. 104, 122 (1986)
(private plaintiff must show injury or threatened injury to its own interests); Credit Bureau
Reports, Inc. v. Retail Credit Co., 476 F.2d 989, 992 (5th Cir. 1973) (mere showing by
private plaintiff of antitrust violation has no actionable significance because, while
government action need only show antitrust violation, private litigant must show violation
together with injury or threatened injury to its own interests caused by the violation).
Therefore, as in any suit for injunctive relief, the burden rests with the plaintiff to establish
that its private interests are threatened with harm due to the impending or ongoing illegal
conduct of the defendant.

 The trial court did not give a reason for its refusal to grant an injunction except to say
that it based its decision on the jury verdict and the record. The jury found Chromalloy was
not damaged or irreparably injured as a result of Pratt's illegal conduct, and the evidence
tending to show Chromalloy is threatened with injury is both disputed and inconclusive.

 Chromalloy relies on the jury's affirmative answer to the attempted monopoly
question to show that it was threatened with harm. Specifically, it focuses on the question's
definition of "attempted monopoly" and its reference to "dangerous probability":

 Did Pratt & Whitney attempt to engage in monopolistic
conduct which was a material cause of injury to Chromalloy?

 "Attempt to engage in monopolistic conduct" means (1)
a party has engaged in exclusionary conduct (2) with the
specific intent to acquire or maintain monopoly power and (3)
there is a dangerous probability of the party achieving
monopoly power in a relevant market.(3)

 According to Chromalloy, because the jury found there is a "dangerous probability" of Pratt
achieving monopoly power in the replacement parts market, we must infer that Chromalloy
is threatened by Pratt's ongoing illegal conduct. We disagree.

 The elements of attempted monopoly must be contemporaneous; that is, the
"dangerous probability" of achieving monopoly power must exist while "a party has
engaged in exclusionary conduct." See Spectrum Sports, Inc., 506 U.S. at 456 (requiring
coexisting elements); United States v. American Airlines, Inc., 743 F.2d 1114, 1118 (5th Cir.
1984) (same). The answer to the jury question establishes that Pratt engaged in attempted
monopolistic conduct at some indeterminate time in the past, but it does not imply a finding
of continuing illegal activity that threatens Chromalloy with injury. The trial court was
obliged to consider this when deciding whether or not to issue an injunction. See Alamo Title
Co., 360 S.W.2d at 816. Given the limited nature of the finding, the trial court was not
required to conclude that ongoing illegal conduct threatened Chromalloy with injury. See
Kneip v. Unitedbank-Victoria, 734 S.W.2d 130, 138 (Tex. App.--Corpus Christi 1987, no
writ) (Dorsey, J., concurring) (stating "[n]o findings of fact [made by the jury] can mandate
an injunction"). Thus, we turn to Chromalloy's assertion that Pratt's threatening, illegal
conduct was established by the evidence as a matter of law.

 Chromalloy asserted a number of separate acts for which it claimed damages and
upon which it based its claim for injunctive relief. According to Chromalloy, these acts,
taken together, constituted a settled course of conduct that violated the antitrust law.
However, the evidence characterizing these events was hotly contested. For example,
Chromalloy complained that Pratt failed to approve repairs as early as 1989 and as late as
1995. Pratt claimed it denied the approvals for various legitimate business reasons. In short,
the record is subject to differing, but reasonable, interpretations on the question of whether
there was ongoing illegal conduct that threatened Chromalloy with injury. Consequently, the
trial court, in exercising its discretion, could conclude that Chromalloy was not threatened
by Pratt.

Conclusion


 To obtain injunctive relief, a private antitrust plaintiff is required to show it is
threatened with injury due to an antitrust violation. In this case, neither the jury findings nor
the record conclusively establish that Chromalloy is threatened with injury as a result of

Pratt's illegal conduct.(4) Accordingly, it was not an abuse of discretion for the trial court to
deny Chromalloy injunctive relief. The judgment is affirmed.


 PAUL W. GREEN

 Justice


PUBLISH

1. Because the Texas Antitrust Act is derived from federal law, it should be construed in harmony with federal
authority. Tex. Bus. & Com. Code Ann. 15.04 (Vernon 1987); DeSantis v. Wackenhut Corp., 793 S.W.2d 670, 687
(Tex. 1990).
2. The Supreme Court has characterized "imminent harm" as a legal question for the court. Operation Rescue-Nat'l v. Planned Parenthood, Inc., 975 S.W.2d 546, 554 (Tex. 1998). Legal questions may involve factual
determinations. See El Paso Natural Gas Co. v. Minco Oil & Gas Co., 964 S.W.2d 54, 60-61 (Tex. App.--Amarillo
1998, pet. filed).
3. Several terms from the definition of "attempted monopoly" were defined in the present tense, including the
terms "exclusionary conduct," "monopoly power," and "relevant market." The definition of "exclusionary conduct"
included the phrase "legitimate business justification," which, in turn, was also defined in the present tense. During
jury deliberations, the jury asked whether the three elements of attempted monopoly were "independent or dependent
of each other." The trial court referred the jury to the charge, but when the court received a second question asking
whether "all 3 factors have to apply," the court responded, "Yes."
4. Because threat of injury was not established, we need not address whether, under the Texas Antitrust Act,
Chromalloy was required to also demonstrate irreparable injury.